NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                  :
ANDREW C. LOVE,                   :
                                  :    Civil Action No. 14-6780 (RMB)
            Plaintiff,            :
                                  :
      v.                          :
                                  :
CAMDEN COUNTY POLICE, et al.,     :
                                  :           **OPINION**
            Defendants.           :
_____ :

**BUMB, District Judge:**

This matter is before the Court upon the Clerk's receipt of Plaintiff's civil complaint ("Complaint"), see Docket Entry No. 1, which arrived accompanied by a duly executed application to proceed in forma pauperis ("IFP"). See Docket Entry No. 1-1. In light of that application, this Court will grant Plaintiff IFP status _for the purposes of this proceeding only_ and will direct the Clerk to file the Complaint.

The Complaint indicates that Plaintiff is a pre-trial detainee confined at the Camden County Correctional Facility ("Facility"). Thus, under the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), this Court is required to screen the Complaint and sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

I.    **BACKGROUND**

Here, Plaintiff raised four different lines of claims and named a different defendant in connection with each claim, see, generally, Docket Entry No. 1, i.e., he named the Facility, the Prosecutor's Office ("Prosecutor's Office"), the Office of Public Defender ("Office of Public Defender") and Camden County Metro Police ("Police Department") as defendants.  See id. at 4-6.

As to the Facilty, Plaintiff asserts that it violated his rights by: (a) "having 4 inmates in a cell and inmates sleep[ing] on floor which is inhumane and also [by] ha[ving] inmates living in deplorable conditions, and [by] den[ying] inmates access to law library."  Id. at 4 (capitalization removed).[1]

As to the Prosecutor's Office, Plaintiff alleges that: "[the Prosecutor's Office] is not following [unidentified] guidelines and conduct of prosecutors [and] is fabricating evidence against [Plaintiff thus] compelling [him] to plea[d guilty] to the accusations."  Id. at 5, 7 (grammar in original, repeating the same allegations twice).

---

[1]  In the "Statement of Claim" section, Plaintiff re-asserts that the Facility "violated [his] rights by having [him] live in an overcrowded jail, in deplorable conditions and inhumane by having [him] sleep on floors, and [by] not following [unspecified] rules and regulations on housing inmates, also [by] denying inmates access to law library."  Docket Entry No. 1, at 7 (capitalization removed, grammar in original).

As to the Office of Public Defender, Plaintiff claims that "[the Office of Public Defender] is not following [unspecified] rules and regulations and standing [sic] operating procedures governing their scope of representation and allocation of authority between client and lawyers/public defender. [The Office of Public Defender is] violating [Plaintiff's] constitutional rights by forcing [him] to have a public defender who is not adequately prepared." Id. at 6-7.

Finally, as to the Police Department, Plaintiff asserts that "[the Police Department] has violated [Plaintiff's] 4th Amendment [rights] by [an] illegal search and seizure[] on May 29th[,] 2014 [and by] fabricating acts of accusation against [Plaintiff] to justify misconduct." Id. (grammar in original).

Plaintiff seeks $5 million in damages. See id. at 8.

## II.   RULES 18 AND 20 AND IFP IMPLICATIONS

Rule 20 of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18 limits the joinder of claims. See Fed. R. Civ. P. 18(a), 20(a)(2). Rule 20 provides that "[p]ersons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them . . . aris[es] out of the same transaction . . . or series of [interrelated] transactions." Fed. R. Civ. P. 20(a)(2)(A) and (B).[2]

---

[2]   Rule 18 (a) provides that "[a plaintiff] may join . . . as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Wright & Miller's treatise on federal civil

3

These requirements apply to all legal actions, including those brought by inmates, even if they are proceeding pro se.

> [M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees . . . . A buckshot complaint that would be rejected if filed by a free person – say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected if filed by a prisoner.

George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007).

Here, the alleged facts depict four unrelated transactions. The first transaction listed in the Complaint derives from Plaintiff's confinement: Plaintiff named the Facility as the Defendant liable on the basis of *that* transaction. See Docket Entry No. 1, at 4.

---

procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . . . Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction.

Charles Allen Wright, et al., 7 Federal Practice & Procedure Civil § 1655 (3d ed. 1997 & 2010 Supp.).

4

The second transaction is based on Plaintiff's interactions with the prosecutors who, seemingly, introduced certain inculpatory evidence into the record and offered Plaintiff a plea bargain: Plaintiff named the Prosecutor's Office as the defendant liable to him on the basis of *that* transaction.   See id. at 5.

The third transaction derives from Plaintiff's interactions with his defense counsel, whose services Plaintiff considers inadequate: Plaintiff named the Office of Public Defender as the Defendant liable to him on the basis of *that* transaction.   See id. at 6.

The last transaction listed in the Complaint is based on Plaintiff's arrest and search that took place on May 29, 2014: Plaintiff named the Police Department as the defendant liable to him on the basis of that transaction.

It is self-evident that the Facility has no connection to Plaintiff's search and arrest or to his interactions with the prosecutors and his defense counsel.  It is equally self-evident that the arresting officers have no connection to Plaintiff's conditions of confinement, or to his interactions with the attorneys litigating his criminal proceedings.  By the same token, there is no connection between Plaintiff's interactions with the prosecutors (or the public defender representing him) and the events of Plaintiff's arrest or his conditions of confinement.

Hence, under Rules 18 and 20, Plaintiff's four lines of allegations should be litigated in four different matters. Correspondingly, this Court will reserve the instant matter for Plaintiff's first listed set of claims (raised against the Facility), and will direct the Clerk to commence two new and separate matters with regard to Plaintiff's claims raised against the Prosecutor's Office and the Police Department.[3]  In the interests of judicial economy, this Court will provide Plaintiff with guidance as to the core deficiencies of *all* his claims so to allow him an opportunity to re-plead his claims intelligently should he choose to do so.[4]

———————————————

[3]  For the reasons detailed below, the Court will not direct the Clerk to commence a new and separate matter on the basis of Plaintiff's challenges raised against the Office of Public Defender.  The Court's election, however, does not prevent Plaintiff from commencing such new matter on his own, provided that he duly prepays his filing fee or applies for IFP status in connection with that matter.

[4]  In the event Plaintiff elects to file pleadings in his new matters, he would be obligated to verify his willingness to assume his financial and legal responsibilities for litigating those matters.  The entire fee to be paid for *each* civil case is $400.  It includes a filing fee of $350 and an administrative fee of $50.  (In each civil case where Plaintiff is granted IFP status he is, instead, assessed a filing fee of $350 and is not responsible for the $50 administrative fee.)  In each month when the amount on Plaintiff's prison account exceeds $10.00, until the $350.00 filing fee is paid, the agency having custody of Plaintiff would deduct from his account, and forward to the Clerk, payment equal to 20% of the preceding month's income credited to Plaintiff's account.  See 28 U.S.C. § 1915(b)(2).  Each time Plaintiff elects to litigate a civil complaint IFP while being incarcerated, this Court will screen his complaint and dismiss his case if it finds that the action is: (a)

### III. CLAIMS AGAINST THE FACILITY

Plaintiff's claims against the Facility are deficient on multiple grounds.  To start, the Facility is not a "person" amenable to a § 1983 suit for damages.  See Grabow v. Southern State Corr., 726 F. Supp. 537, 538-39 (D.N.J. 1989); Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973).  Thus, Plaintiff's claims against the Facility will be dismissed with prejudice.

Moreover, even if this Court were to hypothesize that Plaintiff may amend this line of claims and name, as defendants, not the Facility but particular correctional officers personally responsible for the alleged events, Plaintiff's allegations are substantively deficient as pled.  First, Plaintiff is without standing to raise claims on behalf of other inmates.  See Whitmore v. Arkansas, 495 U.S. 149, 154 (1990) (the jus tertii requirements); see also Steel Co. v. Citizens for Better

---

frivolous or malicious; (b) fails to state a claim upon which relief may be granted; or (c) seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).  If the Court dismisses any case, Plaintiff cannot get his filing fee back.  Moreover, if Plaintiff, on three or more occasions, brings an IFP civil action or appeal while incarcerated, and that action or appeal is dismissed on any of the grounds listed above, Plaintiff would no longer be able to bring another action IFP unless he shows that he is in imminent danger of serious physical injury.  See 28 U.S.C. § 1915(g) ("the three-strikes rule").  Hence, this Court encourages Plaintiff to litigation only for the purposes of bona fide vindication of his rights.  In other words, a legal action should not be commenced with a goal of pestering, threatening or intimidating a certain entity/person or to express one's emotions or frustration.

Environment, 523 U.S. 83, 103, n.5 (1998) ("the point [is] whether a plaintiff 'personally would benefit in a tangible way from the court's intervention'") (quoting Warth v. Seldin, 422 U.S. 490, 508 (1975)).  Thus, all Plaintiff's claims asserting wrongs suffered by other inmates will be dismissed with prejudice.

Second, Plaintiff's own claims cannot be reduced to bold, generic, conclusory allegations that the prison officers violated his rights.[5]  "[A] complaint must contain sufficient *factual* matter, [i.e., it must] 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(emphasis supplied, quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678 (emphasis supplied).  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not suffice.  Id. at 678.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

_____

[5]  A fortiori, Plaintiff cannot assert that any entity violated his rights by not following certain 'rules," "regulations," "guidelines," "procedures," "codes of conduct," etc., since the mandate of Section 1983 is meant to remedy only the violation of *constitutional magnitude*.

elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)); <u>see also Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  In other words, Plaintiff's allegations must be factual, <u>i.e.</u>, a description of "the who, what, when, where, and how: the first paragraph of any newspaper story," and these allegations should be free of self-serving, bold conclusions.  <u>In re Advanta Corp. Sec. Litig.</u>, 180 F.3d 525, 534 (3d Cir. 1999).

Here, Plaintiff's claims against the Facility are largely such bold conclusions.  The handful of facts Plaintiff stated allows this Court to hypothesize, at most, that Plaintiff: (a) spent the period from May 30 to October 1, 2014, housed in a cell with three cell-mates; (b) was sleeping on a mattress placed on the floor rather than on a bunkbed; (c) became displeased with the condition of his cell; and (d) developed a belief that his rights were violated by lack of access to the Facility's law library.  So-pled allegations, even if true, fail to state a cognizable claim.

Analyzing a conditions of confinement claim under the Fourteenth Amendment, the Supreme Court stated that:

> [i]n evaluating the constitutionality of conditions or
> restrictions of pretrial detention that implicate only
> the protection against deprivation of liberty without
> due process of law, we think that the proper inquiry is

whether those conditions amount to punishment of the
detainee.

Bell v. Wolfish, 441 U.S. 520, 535 (1979) (footnotes omitted).

Thus, the central question is whether Plaintiff sufficiently
alleged that his conditions of pretrial confinement constituted
punishment without due process.  See Southerland v. Cty. of
Hudson, 523 F. App'x 919, 921 (3d Cir. 2013).  Being housed in a
cell with three other inmates or having one's mattress placed on
the floor does not qualify as such punishment.

The Court of Appeals expressly pointed out that pretrial
detainees do not have a right to be free from being housed with
other inmates.  See Hubbard v. Taylor, 538 F.3d 229, 236 (3d Cir.
2008); see also North v. White, 152 F. App'x 111, 113 (3d Cir.
2005) (per curiam) (relying on Union Cty. Jail Inmates v.
DiBuono, 713 F.2d 984, 1000 (3d Cir. 1983)); Gibase v. George W.
Hill Corr. Facility, 2014 U.S. Dist. LEXIS 820862 (E.D. Pa. June
16, 2014) ("housing multiple inmates in a cell does not alone
establish a constitutional violation").  "Likewise, [there is no]
right of pretrial detainees to be free . . . from sleeping on a
mattress placed on the floor."   Hubbard, 538 F.3d at 236.

Correspondingly, Plaintiff's allegations that he was housed
in a cell containing three cell-mates and had his mattress placed

on the floor for five months will be dismissed for failure to state a claim upon which relief can be granted.[6]

However, mindful of the Court of Appeals' guidance that the Fourteenth Amendment conditions of confinement inquiry turns on the totality of factors, see Hubbard, 538 F.3d at 233 ("we do not assay separately each of the institutional practices, but instead look to the totality of the conditions") (citation and brackets omitted), and taking notice of Plaintiff's unelaborated-upon statement that he was subjected to "deplorable" conditions, this Court will dismiss Plaintiff's Fourteenth Amendment claims without prejudice. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997), for the observation that, "[where] the District Court . . . conclude[s] that [the plaintiff's] filings

---

[6] Unconstitutional punishment includes both objective and subjective components. See Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (citing Bell v. Wolfish, 441 U.S. 520, 538-39 & n. 20 (1979)). As to the "objective component," the court must consider "whether these conditions 'cause inmates to endure such genuine privations and hardship over an *extended period of time*,' that the adverse conditions become excessive in relation to the purposes assigned to them." Hubbard, 399 F.3d at 159 (quoting Union County, 713 F.2d at 992) (brackets removed, emphasis supplied). The Hubbard Court held that requiring pretrial detainees to sleep on mattresses on the floor in cells holding many inmates for *seven months* did not constitute punishment under the Fourteenth Amendment. See 538 F.3d at 234-35.

[are] inadequate, . . . [leave to amend] must be granted in the absence of . . . futility of amendment").

Plaintiff's First Amendment allegations will analogously be dismissed without prejudice.  In <u>Bounds v. Smith</u>, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. 817, 828 (1977).  However, the right of access to the courts is not unlimited.  "The tools [that <u>Bounds</u>] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis removed).  Thus, to state a cognizable access claim, Plaintiff must demonstrate that: (a) he suffered an "actual injury" (<u>i.e.</u>, that he lost an opportunity to pursue a non-frivolous claim); and (2) he has no other remedy, save the present civil rights suit, that can possibly compensate him for the lost of that claim.  <u>See</u> <u>Monroe v. Beard</u>, 536 F.3d 198, 205 (3d Cir. 2008).  Correspondingly, Plaintiff will be allowed to

detail the facts of his own First Amendment claim, if any, in his amended pleading.[7]

## IV.   CLAIMS AGAINST THE PROSECUTOR'S OFFICE AND POLICE DEPARTMENT

Since this Court will direct the Clerk to commence two new matters for Plaintiff, the Court finds it warranted to point out the core deficiencies of Plaintiff's claims underlying these new matters.   See Pliler v. Ford, 542 U.S. 225, 231-32 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants"); accord Reeves v. Office of the Pub. Defender, 2012 U.S. Dist. LEXIS 23289, at *5 (D.N.J. Feb. 23, 2012) ("the Court's [extensive] legal assistance to [a pro se litigant] would render the Court biased") (citations omitted).

Plaintiff's claims raised against the Prosecutor's Office are deficient on various grounds.   First, all claims for damages against the Prosecutor's Office, i.e., a state-funded entity, are barred by the Eleventh Amendment.   See Estate of Lagano v. Bergen

---

[7]   "The [amended] complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"   Id. at 205-06 (citing Christopher v. Harbury, 536 U.S. 403, 416-17 (2002)); see also Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997); Hoffenberg v. Bumb, 446 F. App'x 394 (3d Cir. June 9, 2011).   Thus, Plaintiff must detail the exact non-frivolous claim (challenging his conviction/ sentence or his conditions of confinement) that he conclusively lost and, in addition, explain: (a) how the lack of access to the library caused him loss of that claim; (b) why, short of the instant matter, he is and was stripped of all means to obtain remedy on the basis of that claim; and (c) the actual actions undertaken by each Defendant that caused him such loss.

Cty Prosecutor's Office, 2014 U.S. App. LEXIS 19722, at *15-17
(3d Cir. Oct. 15, 2014) (applying the test set forth in Fitchik
v. N.J. Transit Rail Operations, 873 F.2d 655, 659 (3d Cir.
1989)).  Thus, Plaintiff's claims against the Prosecutor's Office
shall *not* be re-raised.  Second, even if Plaintiff names
individual prosecutors as Defendants, his claims against those
prosecutors would be barred by absolute prosecutorial immunity
with regard to all conduct those prosecutors performed in their
capacity as attorneys for the State.

Here, Plaintiff asserts that the prosecutors were offering
him a plea bargain and introduced certain evidence into the
record.  Such actions fall within the realm of prosecutorial
conduct performed by an attorney for the State.  Correspondingly,
these claims are barred by absolute immunity and should not be
re-raised.  See Kalina v. Fletcher, 522 U.S. 118, 129  (1997).

However, this Court takes note of Plaintiff's unadorned
allegation that the prosecutors were "fabricating" evidence
against him.  The Supreme Court in Buckley v. Fitzsimmons
carefully scrutinized a prosecutor's actions in obtaining a
murder indictment of a criminal defendant.  See 509 U.S. 259, 261
(1993).  There, after a third party confessed to the murder, the
defendant sued the prosecutor, claiming that the prosecutor
fabricated evidence to obtain the *indictment*.  See id. at 264.
The Buckley Court held that the prosecutor was not entitled to

14

absolute immunity for this act.  See id. at 275-77.  The Court
pointed out that, at the time the prosecutor allegedly fabricated
the evidence, he had *no probable cause* (i.e., no other evidence)
against the defendant, that *no indictment* had been issued by the
time the evidence was fabricated, and *no judicial proceeding* had
begun.  See id. at 275-76.  In light of the fact that the
prosecutor's actions were purely investigatory, the Buckley Court
concluded that the prosecutor was not entitled to absolute
immunity.  See id.

     Here, it appears that the alleged "fabrication" has been
taking place long after Plaintiff's criminal proceeding against
him got underway, the prosecutor's acts had no connection to any
investigatory function, and the prosecutor had probable cause for
prosecuting Plaintiff.  Thus, Plaintiff's allegations as to
"fabrication" are deficient as pled.  However, out of an
abundance of caution, this Court will allow Plaintiff to amend
that claim by naming a particular prosecutor as Defendant,
detailing the alleged "fabrication" that such prosecutor
performed and describing the facts showing that the prosecutor
was acting not as attorney for the State when (s)he fabricated
the evidence.[8]

---

     [8]  The Court reminds Plaintiff that he would be obligated to
confirm his willingness to assume his financial responsibility
for another $350 assessment, as well as Plaintiff's understanding
that, in the event that his allegations against the prosecutor

Plaintiff's claims against the Police Department are analogously deficient as pled.  The Police Department is not a "person" amenable to suit for damages under § 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Thus, Plaintiff's claims against the Police Department itself shall not be re-raised.

Moreover, even if Plaintiff names particular police officers as Defendants, his conclusive allegations that he was subjected to an illegal arrest and search are insufficient.  "The proper inquiry in a Section 1983 claim based on false arrest is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."[9]  Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988).  "When an officer has probable cause to believe a person committed even *a minor crime*,

---

are dismissed, Plaintiff would incur a "strike" for the purposes of the three-strikes rule.

[9]  Notably, the period of false arrest and imprisonment is very short: a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest, applies only to the period of incarceration lasting from the moment of arrest until the first legal action, e.g., an arraignment or first court appearance.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995).  The Supreme Court explained that, "[f]alse arrest and false imprisonment overlap; the former is a species of the latter," Wallace v. Kato, 549 U.S. 384, 388 (2007), and the damages recoverable under such claims are limited to those ensuing from the period of detention until the first legal action.  See Connelly v. Wren, 2013 U.S. Dist. LEXIS 1190 (D.N.J. Jan. 4, 2013).

the balancing of private and public interests is not in doubt and the arrest is constitutionally reasonable." <u>Virginia v. Moore</u>, 553 U.S. 164, 171 (2008) (emphasis supplied); <u>see also Harrington v. City of Nashua</u>, 610 F.3d 24 (1st Cir. 2010) (alternatively, an arrest executed pursuant to a proper warrant is always an arrest upon probable cause).

Thus, Plaintiff must state "the facts showing that, under the circumstances within the officer[s'] knowledge, a reasonable officer could not have believed that an offense had been or was being committed by [Plaintiff]." <u>Mosley v. Wilson</u>, 102 F.3d 85, 94-5 (3d Cir. 1996); <u>accord Revell v. Port Authority of New York, New Jersey</u>, 598 F. 3d 128, 137 n.16 (3d Cir. 2010).

Furthermore, in <u>New York v. Belton</u>, the Supreme Court announced a broad and permissive standard regarding searches incident to arrest.  <u>See</u> 453 U.S. 454, 460 (1981).[10] Correspondingly, in the event Plaintiff was searched upon his arrest, the search was appropriate.  Thus, in the event Plaintiff elects to litigate his claims related to search and arrest, he

---

[10]   In <u>Arizona v. Gant</u>, 556 U.S. 332 (2009), the Supreme Court narrowed the <u>Belton</u> rule with regard to a vehicle search incident to a recent occupant's arrest by pointing out that such a search was only constitutionally reasonable where: (1) "the arrestee [was] within reaching distance of the vehicle during the search, or (2) . . . the police ha[d] reason to believe that the vehicle contain[ed] 'evidence relevant to the crime of arrest.'" <u>Davis v. United States</u>, 131 S. Ct. 2419, 2424 (2011) (quoting <u>Gant</u>, 556 U.S. at 343).

must name a proper Defendant and carefully detail the facts and circumstances of his arrest and search, as well as the chronological order of these events.

## V.   CLAIMS AGAINST THE OFFICE OF PUBLIC DEFENDER

Plaintiff's claims for damages against the Office of Public Defender, i.e., a state-funded entity, are barred by the Eleventh Amendment.  See Lagano, 2014 U.S. App. LEXIS 19722, at *15-17 (relying on Fitchik, 873 F.2d at 659).[11]  Moreover, even if Plaintiff paraphrases this challenge in terms of a claim against his defense counsel, such challenge would be subject to dismissal for lack of color of state law.

To recover under 42 U.S.C. § 1983, Plaintiff must establish that his counsel acts under "color of [state] law" to deprive him of a right secured by the federal Constitution or laws.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).[12]

---

[11]  The gist of Plaintiff's claim against the Office of Public Defender is that Plaintiff is displeased with his current defense counsel and would like to obtain a substitute counsel. If so, his remedy is not a civil suit in this Court but a speedy application (addressed to the Office of Public Defender and/or to the state judge presiding over Plaintiff's criminal prosecution) detailing the basis for Plaintiff's belief that his counsel's assistance in inadequate and seeking replacement of his counsel.

[12]  Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights.  See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Groman, 47 F.3d at 633.

18

"The color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." Id. at 638.  The color of state law element in a Section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982).  For the conduct to be "fairly attributable" to the State, (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible, and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State. See id. at 936-39.

It is well-settled that neither a privately retained counsel nor a court-appointed public defender who performs a lawyer's traditional function as counsel to a defendant in a criminal proceeding could be deemed as acting under color of law. See Polk County v. Dodson, 454 U.S. 312, 325 (1981).  Whether court-appointed or privately retained, a defense attorney represents only his/her client and *not* the state. See Johnson v. Kafrissen, 1995 U.S. Dist. LEXIS 8072, at *2 (E.D. Pa. June 5, 1995).  Thus, Plaintiff's claims against his defense counsel

19

would fail to satisfy the color of law requirement.
Correspondingly, commencement of a new matter on the basis of
such claim appears not in the interests of justice.  However, as
noted <u>supra</u>, Plaintiff may commence such new action on his own by
submitting a civil complaint stating the fact that show that
Plaintiff's defense counsel is acting as an agent for the State.

**VI.  CONCLUSION**

For the foregoing reasons, Plaintiff's IFP application will
be granted for the purposes of the instant matter only.  This
matter will be reserved for Plaintiff's claims based on his
confinement.  Plaintiff's claims against the Facility will be
dismissed with prejudice.  However, Plaintiff's First and
Fourteenth Amendment claims will be dismissed without prejudice
to re-pleading in accordance with the guidance provided in this
Opinion, <u>i.e.</u>, by naming specific correctional officers as
Defendants and detailing the facts establishing that Plaintiff
was subjected to punishment without due process and that
Plaintiff conclusively lost a viable claim related to his
prosecution or conditions of confinement because of his lack of
access to the Facility's law library.

Plaintiff's claims against the Prosecutor's Office, the
Office of Public Defender and the Police Department will be
severed in accordance with Rules 18 and 20.  The Clerk will be
directed to commence two new and separate matters for Plaintiff:

one to litigate Plaintiff's claims based on the alleged fabrication of evidence by the prosecutor and another to litigate his claims asserting false arrest and illegal search.  Plaintiff will be allowed to file amended complaints in his new matters, provided that he verifies in writing his willingness to assume his financial and legal responsibilities for litigating those matters.

No new matter will be commenced on the basis of Plaintiff's claims ensuing from his displeasure with his public defender, since such measure does not appear in the interests of justice. Plaintiff will be allowed to commence such new action on his own in the event he has a <u>bona</u> <u>fide</u> belief that he has a viable claim in light of the guidance provided to him in this Opinion.

An appropriate Order follows.

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**United States District Judge**

Dated: <u> November 21, 2014</u>

21